ALEXANDER HELLER, Respondent, v. CHARLES E. POPE and C. W. POPE, Individually and as Copartners Doing Business under the Firm Name of C. W. POPE & COMPANY, Appellants.

First Department, July 11, 1918.

Contract — " option " defined — option to purchase corporate stock.

The word " option " has a well-settled legal meaning, and unless it clearly appears that it is not used in its ordinary sense, it gives to the person who holds it the right to exercise the privilege conferred or not as that person shall choose.

An agreement to sell shares of stock " under an option " at a certain price, and also " to option " additional shares, and containing the obligation

" for this option," examined and *held* not to import a legal obligation to purchase the stock, but merely to entitle the parties to take the stock or not as they might elect.

APPEAL by the defendants, Charles E. Pope and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 14th day of February, 1918, denying their motion for judgment on the pleadings consisting of an amended complaint and the answer thereto.

*Horace E. Parker,* for the appellants.

*J. Robert Rubin* of counsel [*Nelson Ruttenberg* with him on the brief], for the respondent.

SMITH, J.:

The complaint alleges that the defendants were copartners; that upon the 27th of April, 1917, plaintiff entered into an agreement with the Tuscon Arizona Copper Company, whereby said copper company agreed to sell the plaintiff 270,000 shares of the treasury stock of said company at the rate of thirty cents per share for 200,000 shares of said stock, and at the rate of seventy cents per share for the remaining 70,000 shares, and further providing for a minimum payment by plaintiff to said copper company of $5,000 a month upon said purchase price. It is further alleged that upon the 24th of April, 1917, the plaintiff entered into a contract with one John F. Cowan, whereby said John F. Cowan agreed to sell to the plaintiff 150,000 shares of the treasury stock of said copper company at sixty cents per share. On or about the 6th day of July, 1917, the plaintiff entered into a contract with the defendants, which is here for construction. That contract reads as follows:

" *July 6th,* 1917.

" Messrs. C. W. POPE & Co.,
          " 25 Broad St., New York:
" GENTLEMEN.— Referring to an arrangement I am making with you this day, I agree to let you sell for me 200,000 shares of treasury stock of the Tuscon Arizona Copper Co., of Tuscon, Arizona, at $1.00 per share, and agree to sell same to you under an option for 70c. per share.

First Department, July, 1918. [Vol. 183.

" I also agree to option to you 70,000 shares of treasury stock additional at $1.00 per share. You are to use your discretion in the selling price of this stock, but it cannot be sold for less than $1.25 per share.

" When this treasury stock is disposed of by you, I then give you an option on 150,000 shares of Vendors stock at 95c. per share, which you cannot sell for less than $1.25 minimum. I leave it to your discretion to get as much as you can for this stock, but under no conditions would I care to·have this stock sold for less than $1.25.

" For this option you agree to do the following:

" You agree to sell this stock to the best of your ability; advertise it, and use all the methods necessary for the disposal of same, and you guarantee to sell a minimum of 10,000 shares per month, each calendar month, beginning the 25th day of July.                    Very truly yours,

"(Signed)   A. HELLER.

" Agreed to:

" Signed — C. W. POPE & Co."

The Special Term has construed this contract to import a legal obligation on the part of the defendants to purchase the stock of the copper company from this plaintiff, for which they had contracted, as set forth in the complaint. If this contract contains this legal obligation, the motion by the defendants for judgment upon the pleadings was properly· denied. I am unable, however, to so construe the contract. The 1st paragraph of the contract is an agreement to sell 200,000 shares of stock *at an option* of seventy cents per share. The 2d paragraph recites: " I also agree *to option* to you 70,000 shares of treasury stock." In the 3d paragraph it is provided, when this treasury stock is disposed of: " I then give you *an option* on 150,000 shares of Vendors stock." The last paragraph contains the obligation of the defendants " *for this option*." The word " option " has a well-settled legal meaning. It is undoubtedly true that its meaning may be varied by the context or by the circumstances under which it is used, but unless it clearly appears that it was not used in its ordinary sense, an option gives to the person who holds it the right to exercise the privilege conferred, or not,

as that person shall choose. Defendants, therefore, under this contract were entitled to take this stock or not, as they might elect. The obligation which the defendants assumed in the last paragraph of the contract in consideration of the option is·not perfectly clear. I am unable, however, to read into the contract any binding obligation on the part of the defendants, unless the option be exercised, in which case the defendants were bound to dispose of a minimum of 10,000 shares per month. To hold that the defendants had obligated themselves by this last paragraph of the contract if they did not exercise the option to purchase, would make the contract an unreasonable one, as the contract to sell the stock inferentially contemplated the sale of the stock which was purchased under the option. Before the twenty-fifth day of July the defendants gave notice that the option was not accepted. Thereupon, as I view the contract, the defendants' obligations became inoperative and the plaintiff has no cause of action against the defendants thereupon.

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

DOWLING, PAGE, SHEARN and MERRELL, JJ., concurred.

SHEARN, J. (concurring):

I agree with Mr. Justice SMITH that no cause of action is shown for the breach of an obligation to purchase stock. But I think that the agreement was, in effect, that the defendants undertook to market this copper stock and sell a minimum of 10,000 shares a month in consideration of·the option whereby the plaintiff agreed to let the defendants have the stock to sell at the stated option prices. The complaint fails, however, to allege that the plaintiff ever offered or tendered any stock to the defendants, without which the defendants of course could not venture to sell. The allegation that the defendants repudiated the agreement does not excuse the failure to tender stock, for the complaint affirmatively shows that the plaintiff was never able to procure any of the stock which the defendants were to sell. Plaintiff's inability to procure the stock cannot be legally charged against the defendants, so as to excuse tender, for plaintiff's

procurement of the stock necessarily preceded any obligation on the part of the defendants to sell. Therefore, from this point of view also, the complaint is insufficient.

MERRELL, J., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.